Sarah Shapero (Bar No. 281748)
Dario Puccini (Bar No. 336466)
SHAPERO LAW FIRM, PC
100 Pine St., Ste. 530
San Francisco, CA 94111
Phone: (415) 273-3504 | Fax: (415) 358-4116
sarah@shaperolawfirm.com
dario@shaperolawfirm.com

Attorney for Plaintiffs,
DANNY MORRIS
LYNDA MORRIS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY MORRIS, an individual, and LYNDA MORRIS, an individual;<br><br>Plaintiff,<br><br>v.<br><br>SELECT PORTFOLIO SERVICING INC; CLEAR RECON CORP; and WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE WAMU MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-PR1; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.: 8:23-cv-01926<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER TO ENJOIN THE TRUSTEE'S SALE AGAINST PLAINTIFF'S PROPERTY**<br><br>Date:   October 16, 2023 |

## I. INTRODUCTION

This is a case where Defendant intends to sell Plaintiffs' property at a Trustee's Sale, while Plaintiffs' loan modification application has not been assessed and decided on. Plaintiffs are now at risk of losing their home of over 15 years to foreclosure at a Trustee's Sale scheduled for October 16, 2023, without a meaningful opportunity to be evaluated for foreclosure prevention alternatives. Otherwise, Plaintiffs will lose their home and property, which are considered unique and irreplaceable in the state of California.

For these reasons and the arguments set forth below, Plaintiffs respectfully requests that the Court grant their Ex Parte Application for Temporary Restraining Order.

## II. STATEMENT OF FACTS

Plaintiffs DANNY MORRIS, and LYNDA MORRIS ("Plaintiffs") at all relevant times, owned the Property located at 11562 MAC DUFF STREET, GARDEN GROVE, CA 92841. The Property is a single-family home and has served as Plaintiff's' primary residence for the times mentioned herein. (Declaration of DANNY MORRIS at ¶ 2.)

Plaintiffs' property rental business was brought to a screeching halt during COVID which caused Plaintiffs financial hardship due to not being able to collect rent from their tenants. (*Id*. at ¶ 3.) Plaintiff DANNY MORRIS then had a series of medical issues which led to him having approximately eight surgeries from 2020 until present day, with the most recent one taking place on October 2, 2023. (*Id*. at ¶ 4.) Plaintiffs' financial hardship from their COVID business slow down and medical issues led them to fall behind on their mortgage on or around October 2020. (*Id*. at ¶ 5.)

On June 29, 2022, Defendant CLEAR RECON caused a Notice of Default to be recorded with the Orange County Recorder's Office document number 2022000231556. The Notice of Default indicated that Plaintiffs were in $40,356.57 of arrears. . (*Id*. at ¶ 6.)

In late 2022, Plaintiffs reached out to Defendant SPS to inquire about forbearance of the arrears and to resume making their monthly payments. Plaintiffs were then reviewed over the phone for their forbearance request and instructed to make six payments monthly payments. (*Id*. at ¶ 7.) Plaintiffs never received paperwork for a forbearance agreement after the over the phone

review.  (*Id*. at ¶ 8.)  Plaintiffs made nine monthly payments beginning in August 2022 and ending in May 2023.  (*Id*. at ¶ 9.)

In May 2023, Defendant SPS refused to take monthly payments from Plaintiffs and instructed Plaintiffs to submit a Mortgage Assistance Application with all accompanying documents to determine Plaintiffs' eligibility for their requested forbearance.  (*Id*. at ¶ 10.)  In May of 2023, Plaintiffs submitted a Mortgage Assistance Application with all accompanying documents as Defendant SPS requested.  (*Id*. at ¶ 11.)  Since Plaintiffs turned in their Mortgage Assistance Application, Plaintiffs have been diligently providing Defendant SPS updated documents, but Defendant SPS would constantly ask Plaintiffs for previously submitted documents.  (*Id*. at ¶ 12.)

Defendant CLEAR RECON caused a Notice of Trustee's Sale to be recorded with the Orange County Recorder's Office document number 2023000130573.  The Notice of Trustee's Sale indicates the unpaid principal balance and costs to be $292,613.33, with a sale date for July 24, 2023.  The sale has been postponed to October 16, 2023. (*Id*. at ¶ 13.)

Defendant SPS would constantly ask for renewed documents months after Plaintiffs submitted them on the basis that the documents go stale after 90 days, causing Plaintiffs to resubmit bank statements on over three occasions while dealing with his multiple surgeries.  (*Id*. at ¶ 14.)  Defendant SPS would also not give Plaintiffs reasonable time to turn in necessary documents.  For example, Defendant SPS sent a letter dated September 13, 2023, requesting additional documentation for rental income.  Then Defendant SPS sent another letter dated two days later September 15, 2023, stating, "SPS did not receive the required documents within the timeline specified.  As such, we did not evaluate this account for loss mitigation and have closed this request for review."  Two days is not a reasonable amount of time for Plaintiff to provide the requested documentation.  (*Id*. at ¶ 15.)

Plaintiffs have yet to be evaluated for a forbearance agreement or any other loss mitigation options, despite having turned in all documents requested by Defendant SPS.  (*Id*. at ¶ 16.)  Defendant SPS has made Plaintiffs jump through hoops by making multiple requests for the same documents, asking Plaintiffs to make insignificant alterations to submitted documents, and

3

1 | making requests with unreasonably fast turnaround times. Even with Plaintiffs still complying
2 | with all Defendant SPS' requests, Defendant SPS refuses to evaluate Plaintiffs for loss mitigation
3 | options. (*Id.* at ¶ 17.)
4 |      Despite Plaintiffs' pending complete loan modification application, Plaintiffs are in
5 | imminent danger of losing their home at the Trustee's Sale scheduled for October 16, 2023. (*Id.*
6 | at ¶ 18.)

## III. ARGUMENT

### 1. Legal Standard

Plaintiff requests injunctive relief because they face the imminent foreclosure of their property in violation of the California statutes, Federal statutes and common law claims. Plaintiff requests that this Court preserve the status quo pending hearing on Plaintiff's application for a preliminary injunction. (Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers (1974) 415 US 423, 439 [purpose of a temporary restraining order is to preserve the status quo until the merits of the action can be determined].)

Temporary restraining orders and preliminary injunctions are substantially similar, and both may issue under (Cal. Code Civ. Proc. § 527.) Injunctive relief issues (1) where it appears from the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of the act complained of; or (2) where pecuniary compensation would not afford adequate relief; or (3) where it would be extremely difficult to ascertain the amount of compensation which would afford adequate relief. (Cal. Code Civ. Proc. § 526). In determining whether injunctive relief should issue, courts consider (a) the likelihood that the moving party will prevail on the merits of his claim and (b) the harm to the respective parties if relief is granted or denied. (Sahlolbei v. Providence Healthcare, Inc. (2003) 112 Cal.App.4th 1137, 1145.) A Notice of Trustee's Sale has been recorded and is scheduled for August 2, 2022. Therefore, Plaintiff requests that the Court enjoin Defendant from holding a Trustee's Sale, pending hearing on a preliminary injunction.

### 2. Plaintiffs are Likely to Succeed on the Merits of Their Claims.
#### A. Plaintiffs are Likely to Succeed on Their Claim for Promissory Estoppel.

In California, under the doctrine of promissory estoppel, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. (*Kajima/Ray Wilson v. Los Angeles Cnty. Metro. Transp. Auth.* (2000) 23 Cal.4th 305 quoting Rest.2d Contracts, § 90, subd. (1).) The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." (*US Ecology, Inc. v. State of California* (2005) 129 Cal.App.4th 887, 901; *Joffe v. City of Huntington Park* (2011) 201 Cal.App.4th 492, 513; see also *Aceves v. U.S. Bank N.A*. (2011) 192 Cal.App.4th 218, 225.)

Plaintiffs completed a loss mitigation application over the phone with Defendant SPS around the end of 2022. Plaintiffs were then instructed to complete six monthly payments to be evaluated for a Forbearance Agreement. Plaintiffs went above and beyond and completed nine monthly payments beginning in August 2022 and ending in May 2023.

In May 2023, Defendant SPS refused to take monthly payments from Plaintiffs and instructed Plaintiffs to submit a Mortgage Assistance Application with all accompanying documents to determine Plaintiffs' eligibility for their requested forbearance.

Defendant SPS never evaluated Plaintiffs for a Forbearance Agreement. Plaintiffs were injured by making nine monthly payments under the impression that they would be evaluated for a Forbearance Agreement. Instead, Plaintiffs were never evaluated for any loss mitigation options and placed in imminent harm of losing their home when Defendant CLEAR RECON caused a Notice of Trustee's Sale to be recorded with the Orange County Recorder's Office document number 2023000130573.

**B.    Plaintiffs are Likely to Succeed on Their Claim for Violation of 12 CFR 1024.41.**

12 CFR § 1024. 41(c)(1)(ii) mandates that a servicer must, ""[p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall

include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section." Plaintiffs are borrowers under RESPA.

During the end of 2022, Plaintiffs called Defendant SPS and completed a review for Plaintiffs' forbearance request over the phone. Defendant SPS informed Plaintiffs that they successfully completed their Forbearance review over the phone and had to complete six months' worth of payments to be evaluated. Plaintiffs went above and beyond and completed nine monthly payments beginning in August 2022 and ending in May 2023.

In May 2023, Defendant SPS refused to take monthly payments from Plaintiffs and instructed Plaintiffs to submit a Mortgage Assistance Application with all accompanying documents to determine Plaintiffs' eligibility for their requested forbearance.

Defendant SPS never evaluated Plaintiffs for a Forbearance Agreement. Defendant SPS violated this statute and Plaintiffs are entitled to damages, equitable relief, and attorney's fees. Plaintiffs has acquired damages because of Defendant's actions of foreclosure fees and costs that would not be owed but for Defendant's conduct, attorneys fees, and emotional distress.

### C.  Plaintiffs are Likely to Succeed on Their Claim for Violation of Civil Code § 2923.6.

California Civil Code § 2923.6(c) provides, "[i]f a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occur:

> (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

>(2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
>
>(3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

California Civil Code § 2923.6(c).

At all times relevant, Plaintiff is the owner of the Property and resided therein as his primary and principal residence, thus is a borrower within the meaning of the statute. Plaintiffs turned in completed a forbearance review over the phone in late 2022 and submitted a mortgage assistance application in May 2023. Since Plaintiffs turned in their Mortgage Assistance Application, Plaintiffs have been diligently providing Defendant SPS updated documents, but Defendant SPS would constantly ask Plaintiffs for previously submitted documents.

Defendant CLEAR RECON caused a Notice of Trustee's Sale to be recorded with the Orange County Recorder's Office document number 2023000130573. The Notice of Trustee's Sale indicates the unpaid principal balance and costs to be $292,613.33, with a sale date for July 24, 2023. The sale has been postponed to October 16, 2023.

Defendant SPS would constantly ask for renewed documents months after Plaintiffs submitted them on the basis that the documents go stale after 90 days, causing Plaintiffs to resubmit bank statements on over three occasions while dealing with his multiple surgeries. Defendant SPS would also not give Plaintiffs reasonable time to turn in necessary documents. For example, Defendant SPS sent a letter dated September 13, 2023, requesting additional documentation for rental income. Then Defendant SPS sent another letter dated two days later September 15, 2023, stating, "SPS did not receive the required documents within the timeline specified. As such, we did not evaluate this account for loss mitigation and have closed this request for review." Two days is not a reasonable amount of time for Plaintiff to provide the requested documentation. Plaintiffs have yet to be evaluated for a forbearance agreement or any other loss mitigation options, despite having turned in all documents requested by Defendant SPS.

Defendant SPS has made Plaintiffs jump through hoops by making multiple requests for the same documents, asking Plaintiffs to make insignificant alterations to submitted documents, and making requests with unreasonably fast turnaround times. Even with Plaintiffs still

complying with all Defendant SPS' requests, Defendant SPS refuses to evaluate Plaintiffs for loss mitigation options.

Despite Plaintiffs' pending complete loan modification application, Plaintiffs are in imminent danger of losing their home at the Trustee's Sale scheduled for October 16, 2023. By attempting to sell Plaintiffs' property while a complete loan modification application is pending, Defendant violated Cal. Civ. Code § 2923.6. Pursuant to Civil Code § 2924.12, Plaintiffs are entitled to injunctive relief for the material violation and attorney's fees.

### D. Plaintiffs are Likely to Succeed on Their Claim for Violation of Civil Code § 2923.7.

California Civil Code § 2923.7(b) requires that a single point of contact [SPOC], among other things, to coordinate the receipt of all documents associated with available foreclosure prevention alternatives and notify the borrower of any missing documents necessary to complete the application; to ensure that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer; to have access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative; and have access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

Defendant violated California Civil Code § 2923.7(b) by failing to provide Plaintiff with a single point of contact who could carry out all required statutory duties.

Plaintiffs' alleged SPOC's failed to ensure that borrowers were considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, and to have access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative because Plaintiffs completed a forbearance review over the phone, made all six requested monthly payments along with an additional three in a showing of good faith,

Plaintiffs' alleged SPOC's failed to coordinate the receipt of all documents associated with available foreclosure prevention alternatives and notify the borrower of any missing documents necessary to complete the application because Defendant SPS continually asked for

previously submitted documents with unreasonable timelines for Plaintiffs to resubmit the repeatedly requested documents.

Plaintiffs' alleged SPOC's failed to have access to individuals with the ability and authority to stop foreclosure proceedings when necessary because a Trustee's Sale scheduled for October 16, 2023, even though Plaintiffs have a complete Mortgage Assistance Application pending.

Defendant's violations of California Civil Code § 2923.7, entitles Plaintiffs to injunctive relief, as well as attorney's fees. Cal. Civ. Code § 2924.12(h). In addition, because Defendant's conduct was intentional, willful, or reckless, Plaintiffs are entitled to the greater of the treble actual damages or statutory damages of fifty thousand dollars pursuant to California Civil Code § 2924.12(b).

    **E.** **Plaintiffs are Likely to Succeed on Their Claim for Violation of Civil Code § 2924c-d.**

Defendant's conduct, as alleged above, has interfered with Plaintiffs' right of reinstatement under California law. Pursuant to California Civil Code § 2924c, whenever an obligation secured by a deed of trust or mortgage on real Property has become due or been declared due by reason of default, the trustor or mortgagor or his or her successor in interest in the mortgaged or trust property or any part thereof may pay to the beneficiary or the mortgagee the entire amount due and thereby cure the default existing and thereby foreclosure proceedings initiated under the deed of trust or mortgage as if the acceleration had not occurred. See Cal. Civ. Code 2924c(a)(1).

California Civil Code § 2924c(a)(2) delineates the categories of charges a beneficiary can impose as a condition of loan reinstatement. Specifically, a beneficiary or its agent may only charge the following as a condition of reinstatement:

(A) all amounts under the deed of trust then due under the deed of trust

(B) all amounts in default on recurring obligations not shown in the notice of default, and

(C) all reasonable costs and expenses which are actually incurred in enforcing the terms of the obligation, deed of trust, or mortgage, and

(D) trustee's or attorney's fees, subject to subdivision (d), other than the portion of the principal as would not then be due had no default occurred.

The reinstatement quote in this case should be made with using the amounts in Civil Code § 2924d because the Notice of Trustee's Sale was already deposited in the mail. See Cal. Civ. Code 2924d(a)(1). The unpaid principal sum secured shall be determined as of the date the Notice of Default was recorded. (California Civil Code § 2924d(a)(2)).

In the case at hand, Defendant CLEAR RECON violated Civil Codes § 2924c-d by demanding $40,356.57 in arrears, in the Notice of Default from Plaintiff. This amount was excessive to what was necessary to reinstate the loan because Plaintiffs had made nine payments beginning in August 2022 and ending in May 2023. Thus, Plaintiff has been unable to get a fair and accurate reinstatement amount and, therefore, has been deprived of their right to reinstate the loan, despite their explicit right to do so. Plaintiffs are informed and believe that based on the foregoing, the amount demanded to reinstate his loan in the Notice of Trustee's Sale is inflated and includes a demand for payment of items not contemplated by Civil Code § 2924c-d.

Despite these facts and full knowledge of the disputed default, Defendant proceeded with the foreclosure action for Plaintiffs' account, premised on an inaccurate default and after having inflated reinstatement demands that violated the Civil Code § 2924d. Defendant's conduct has resulted in various harms including, but not limited to, the ongoing default which accumulated on Plaintiffs' loan after its right to reinstate the loan was interfered with, credit damage, the fees charged to Plaintiffs' loan, and attorney's fees.

**F.      Plaintiffs are Likely to Succeed on Their Claim for Violation of the Business and Professions Code §§17200 et seq.**

Defendant's conduct, as alleged above, constitutes unlawful, unfair, and/or fraudulent business practices, as defined in the California Business and Professions Code § 17200 et seq. California Business and Professions Code § 17200 et seq. incorporates and provides a basis for enforcement of violations of other statutes and laws and those violations as a business practice.

Specifically, Defendant's violations of California Civil Codes §§ 2923.6, 2923.7, and 2924c-d constitute unfair business practices in violation of California Business and Professions Code § 17200 *et seq*.

Defendant's violation of 12 CFR 1024.41 constitutes unfair business practices in violation of California Business and Professions Code § 17200 *et seq*.

Defendant's violation of promissory estoppel constitutes unfair business practices in violation of California Business and Professions Code § 17200 *et seq*.

As a result of Defendant's wrongful conduct, Plaintiff has suffered various injuries according to proof at trial, including but not limited to the imminent loss of his home. Likewise, Plaintiff was injured and suffered actual damages including but not limited to, loss of money and property, loss of reputation and goodwill, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression, according to proof at trial but within the jurisdiction of this Court.

Plaintiffs seek injunctive relief enjoining Defendant from engaging in the unfair business practices described herein. Plaintiffs further seek restitution, disgorgement of sums wrongfully obtained by Defendant for all foreclosure fees and costs during the time Plaintiff was engaged in loss mitigation efforts with the Defendant. Plaintiffs additionally seek costs of suit, reasonable attorney's fees, and such other and further relief as the Court may deem just and proper.

### 3. Plaintiff Will Suffer Irreparable Harm in the Absence of this Relief.

Plaintiff has established that irreparable injury is not only likely, but also imminent, if this temporary restraining order does not issue. Irreparable injury is an injury "that is not accurately measurable or adequately compensable by money damages." (Ross-Simons of Warwick, Inc. v. Baccarat, Inc., (1st Cir. 1996) 102 F.3d 12, 18).) California law presumes that real property is unique and not easily interchangeable. (Real Estate Analytics, LLC v. Vallas (2008) 160 Cal.App.4th 463, 464; Cal. Civ. Code § 3387; Wheat v. Thomas (1930) 209 Cal. 306.) In fact, under California law, a foreclosure sale on a person's home is conclusively an irreparable harm. (See Wheat v. Thomas (1930) 209 Cal. 306; Cal. Civ. Code § 3387.) As such, if foreclosure activities continue, Plaintiff stands to suffer irreparable harm. In the case at hand, Plaintiff has sufficiently pled that the harm is an immediate threat. Specifically, a Trustee's Sale can take place during Plaintiffs' appeal period of the rejection of their request for mortgage assistance application. Plaintiffs now stands to lose their home after Defendant's misconduct in violation of

the California law. Therefore, allowing Defendant to proceed with foreclosure related filings on Plaintiff's Property in clear violation of these laws would result in an irreparable harm to Plaintiff.

**4.  The Balance of Hardships Overwhelmingly Favors Plaintiff.**

It is well settled that in considering an injunction request, the court should look to the balance of injury and inconvenience and consider whether a greater injury will be done by granting than by refusing an injunction. (Contra Costa Water Co. v. Oakland, (1904) 165 F. 518, 533.) The trial court's discretion to grant or deny a preliminary injunction should be exercised in favor of the party most likely to be injured. (Andrews v. San Bernardino, (Cal. App. 4th Dist., 1959) 175 Cal App 2d 459, 463).

As the law presumes that the loss of real property constitutes irreparable injury, the balance of hardships overwhelmingly favors Plaintiff. Plaintiff stands to lose title to their property after Defendant's blatant violations of California law. As such, Plaintiff stands to suffer irreparable harm. On the other hand, Defendant faces minimal hardship beyond the mere inability to foreclose. Given this, there is little doubt that the balance of hardships overwhelmingly favors Plaintiff and, therefore, the temporary restraining order should issue.

**5.  The Relief Requested is in the Best Interest of the Public.**

Courts "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." (Winter v. NRDC, Inc., (2008) 555 U.S. 7, 24.) The Legislature has expressed a strong preference for fostering more cooperative relations between lenders and borrowers who are at risk of foreclosure, so that homes will not be lost. (Jolley at 903 (citing Cal. Civ. Code § 2923.6).) The provisions were adopted to greatly encourage lenders and loan servicers to engage in good faith negotiations. (Id.) Furthermore, it is in the best interest of the public to discourage mortgage servicers from ignoring lenders notice of intent and efforts to exercise a foreclosure alternative and to exercise the power of foreclosure themselves. Given the foregoing, Defendant's blatant disregard of Plaintiffs noticed good faith efforts to exercise the foreclosure alternative of selling their own property in favor of Defendants exercising their power to foreclose should not be tolerated, as it violates public policy. Further, not issuing the relief

requested could result in the statutes having no legal effect and, thus, not protecting the public interests involved.

### IV.     CONCLUSION

For the reasons set forth herein, good cause exists to grant the instant ex parte application and restrain Defendants from proceeding with the Trustee's Sale scheduled for October 16, 2023, until further order from this Court.

DATED: October 12, 2023                     Respectfully submitted,

                                            SHAPERO LAW FIRM, PC

                                            _/s/ Dario Puccini_
                                            Sarah Shapero
                                            Dario Puccini
                                            Attorney for Plaintiffs,
                                            DANNY MORRIS
                                            LYNDA MORRIS